DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Lucas D. Beeley, appeals the judgment of the Maumee Municipal Court, which, upon a jury verdict, convicted him of operating a motor vehicle under the influence of alcohol, a violation of 4511.19(A)(1)(d).
 {¶ 2} The following facts were gleaned from the hearing on appellant's motion to suppress. On January 15, 2005, at approximately 3:00 a.m., Trooper Brian Beven of the Ohio State Highway Patrol saw a vehicle driving at what he estimated to be five miles an hour over the posted speed limit. No adverse weather conditions existed and the road was clear of any other vehicles. Targeting the vehicle with a laser device, he then verified that the vehicle was traveling at seven miles an hour over the posted limit. The vehicle was not weaving within its lane or driving in any erratic fashion. Beven activated his overhead lights and initiated a stop.
 {¶ 3} Beven approached the passenger side of the vehicle, and, when appellant rolled down the passenger window, he detected the smell of an alcoholic beverage. He described the smell as "a strong odor, unmistakable, it was very much alcohol." He asked appellant whether he had been drinking. Appellant replied that he had been drinking, and had just come from a nearby bar, but that hadn't had anything to drink for about an hour; appellant did not specify how many drinks he had consumed. Beven then asked appellant to exit the vehicle in order to administer field sobriety tests. He described appellant's manner of exiting the vehicle as "normal."
 {¶ 4} First, Beven administered the horizontal gaze nystagmus ("HGN") test. He reported that appellant registered six out of a possible six "clues," indicating that appellant was impaired, and that appellant's eyes were bloodshot. Next, Beven explained and demonstrated the "walk and turn" test, upon the performance of which appellant registered two clues (out of an undefined maximum amount) for impairment. Finally, appellant performed the "one-legged stand" test, which required him to stand on one leg for 30 seconds while counting out loud. During this test, appellant registered one "clue," when he raised his hands above six inches in order to keep his balance. Throughout Beven's report of appellant's performance and on cross-examination, he described appellant's speech as "normal," but he stated that he consistently smelled the odor of alcohol emanating from appellant.
 {¶ 5} Beven then asked appellant to perform a portable breathalyzer test ("PBT"); appellant agreed, and the machine registered a blood-alcohol level of .101. Beven then placed appellant under arrest. For the speeding violation, which precipitated the stop, appellant was given a warning, and no other traffic citations were issued.
 {¶ 6} Appellant filed a motion to suppress all evidence garnered from the stop, arguing that the stop was pretextual and extended without reasonable suspicion. By entry, the trial court denied the motion, reasoning that Beven had validly initiated the stop for speeding, citing Dayton v. Erickson (Mar. 20, 1995), 2d Dist. No. 14712.
 {¶ 7} Appellant challenges his conviction through three assignments of error:
 {¶ 8} "I. The court committed reversible error when it held that the trooper had reasonable cause to make the initial stop of appellant.
 {¶ 9} "II. The court committed reversible error when it failed to find that there was no reasonable articulable suspicion of driving with an unlawful blood alcohol content such as would justify continuing to detain appellant for field sobriety tests.
 {¶ 10} "III. The court committed reversible error when it failed to find that the sobriety tests did not provide probable cause to arrest appellant for driving under the influence."
 {¶ 11} Appellate review of a trial court decision on a motion to suppress evidence presents a mixed question of law and fact.State v. McNamara (1997), 124 Ohio App.3d 706, 710. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." State v. Burnside (2003), 100 Ohio St.3d 152,154-155. The appellate court must then accept the trial court's findings of fact provided that they are supported by competent, credible evidence. State v. Durnwald (2005),163 Ohio App.3d 361, 369, citing Burnside, supra. Next, the appellate court, conducting a de novo review, determines independently whether the facts in the case satisfy the applicable legal standard. Statev. Claytor (1993), 85 Ohio App.3d 623, 627; State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. In weighing the evidence, determinations of a witness' credibility is a function of the trier of fact that is given substantial deference on review.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. This rule also applies to suppression hearings. Statev. Fanning (1982), 1 Ohio St.3d 19, 20.
 {¶ 12} Appellant first argues that Beven had no cause to stop appellant in the first instance. Appellant does not dispute that he was traveling seven miles an hour over the posted limit. Although, at the suppression hearing, appellant's counsel suggested that the stop was motivated by a bare desire to "catch" a drunken driver, appellant does acknowledge the rule that, even if an officer has an ulterior motive, a traffic stop based on probable cause that a traffic violation occurred passes Fourth Amendment muster. Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus. Instead, appellant cites our decision in State v.Downs, 6th Dist. No. WD-03-030, 2004-Ohio-3003, wherein we held that an officer had no reasonable suspicion to believe a traffic violation had occurred where a "minimal and momentary lane incursion" was not likely intentional.
 {¶ 13} Appellant was stopped for speeding, a violation of the traffic code. As in Downs, appellant was not driving erratically or otherwise unlawfully. There are two types of traffic stops, each with its own constitutional standard. The first type of stop, the non-investigatory stop, occurs when an officer witnesses a traffic code violation and stops the motorist to issue a citation, warning, or to effect an arrest. Downs,
supra, at ¶¶ 10-11. In this type of stop, there must be probable cause or "a reasonable ground for belief of guilt." Carroll v.United States (1925), 267 U.S. 132, 161. Probable cause is provided when an officer observes a traffic code violation.Whren v. United States (1996), 517 U.S. 806, 810. The second type of stop is the investigatory stop, or the "Terry" stop,Terry v. Ohio (1968), 392 U.S. 1, which requires reasonable and articulable suspicion that an offense has been committed or is in the process of being committed to be constitutionally valid.Delaware v. Prouse (1979), 440 U.S. 648, 661. By not contesting Beven's statements that he was traveling seven miles an hour over the posted limit, appellant effectively concedes that Beven had probable cause to effect a non-investigatory stop. The fact that Beven decided to warn appellant of his speeding, rather than issue a citation for the violation, is not conclusive as to whether probable cause existed. Appellant's first assignment of error is therefore not well-taken.
 {¶ 14} Next, appellant argues that Beven lacked a reasonable, articulable suspicion of intoxication to justify conducting field sobriety tests, citing Columbus v. Anderson (1991),74 Ohio App.3d 768. Essentially, appellant points to what he characterizes as a dearth of indications supporting a reasonable, articulable suspicion sufficient to turn the noninvestigatory stop into an investigatory Terry stop. "[W]hen an officer's objective reasons for prolonging detention in a traffic stop are unrelated to the purpose of the initial stop, the continued detention must be predicated on `articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention.'" State v. Mapes, 6th Dist. No. F-04-031,2005-Ohio-3359, at ¶ 40, citing State v. McMillin, 6th Dist. No. H-04-018, 2005-Ohio-2096, at ¶ 23, citing State v.Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus. Reasonable suspicion that a driver is intoxicated is all that is required to support further investigation. State v.Gustin (1993), 87 Ohio App.3d 859, 860, citing State v. Bobo
(1988), 37 Ohio St.3d 177.
 {¶ 15} An investigatory stop is proper until it becomes overly intrusive. State v. Turner (Jan. 11, 1993), 4th Dist. No. 812, citing LaFave and Israel, Criminal Procedure (West Ed. 1985) 141, Section 3.5. "[I]n order to conduct field sobriety tests, all that is required is reasonable articulable suspicion of criminal activity. State v. Sanders (1998),130 Ohio App.3d 789, 794. Reasonable suspicion is `* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause.' State v.Shepard (1997), 122 Ohio App.3d 358, 364." State v. Barner
(Apr. 26, 2002), 6th Dist. No. WD-01-034.
 {¶ 16} Turner specifically held that, "after smelling the odor of alcohol on a driver," an officer does not act unreasonably or intrusively by conducting field sobriety tests. The intrusion, however, is "not negligible." State v. Dixon
(Dec. 1, 2000), 2d Dist. No. 2000-CA-30. As the Second Appellate District has repeatedly noted, whether articulable and specific facts exist which justify a prolonged detention for investigative purposes is often a "close" issue. State v. Spillers (March 24, 2000), 2d Dist. No. 1504. Thus, some courts have held that the odor of alcohol alone does not provide reasonable suspicion of driving under the influence. For example, taken alone, a driver's admission to consuming one beer does not warrant field sobriety tests. State v. Gustin, 87 Ohio App.3d at 860-861. BothSpillers and Dixon held that where, after an initial non-investigatory stop, the odor of alcohol and a "de minimus" traffic violation alone do not trigger a reasonable suspicion of driving under the influence such as to warrant field sobriety testing. Where an odor of alcohol is "strong," however, reasonable suspicion may exist even without other indicia of intoxication. State v. Marshall (Dec. 28, 2001), 2d Dist. No. 2001-CA-35, citing State v. Haucke (Mar. 17, 2000), 2d Dist. No. 99-CA-77 (noting that "these may be fine distinctions, and may even prompt police officers to use certain words during their testimony"). Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. State v. Wells,
2d Dist. No. 20798, 2005-Ohio-5008; State v. Cooper, 2d Dist. No. 2001-CA-86, 2002-Ohio-2778; State v. Robinson, 2d Dist. No. 2001-CA-118, 2002-Ohio-2933; State v. Mapes, 6th Dist. No. F-04-031, 2005-Ohio-3359 (odor of alcohol, "slurred speech" and glassy and bloodshot eyes); Village of Kirtland Hills v.Strogin, 11th Dist. No. 2005-L-073, 2006-Ohio-1450.
 {¶ 17} The circumstances of appellant's detention resemble, yet go beyond, the circumstances in the Second District's line of "slight odor" versus "strong odor" cases. At the suppression hearing, Beven stated that as soon as appellant rolled down his passenger side window, he "detected the smell of an alcoholic beverage," and that it was a "strong odor, unmistakable, it was very much alcohol." Beven reported that appellant admitted he had been drinking, and that he had just come from a local bar, but that appellant said he hadn't had anything to drink "in about an hour." On that basis, Beven asked appellant to perform the field sobriety tests.
 {¶ 18} On these close facts, we conclude that Beven acted reasonably in conducting field sobriety tests. Not only did Beven detect a strong odor of alcohol, but appellant also admitted that he had been drinking that evening. These two factors, perceived by Beven during the initial stop, created a reasonable suspicion that appellant's blood-alcohol level was over the proscribed limits and justified field sobriety tests. The trial court correctly refused to suppress evidence of the field tests. Appellant's second assignment of error is not well-taken.
 {¶ 19} Appellant's third assignment of error challenges whether Beven had probable cause to place him under arrest. Essentially, appellant asserts that his performance on the field tests did not provide Beven with sufficient "clues" or "indicators" to justify the arrest, citing State v. Kolesar
(Sept. 20, 2001), 10th Dist. No. 00AP-1435. The state responds that appellant, having failed to argue the issue below, has waived the issue on appeal. Having reviewed the record, including appellant's motion to suppress, we find the issue of whether Beven had probable cause to effect the arrest waived. City ofXenia v. Wallace (1988), 37 Ohio St.3d 216, 218-219; State v.Greer (1988), 39 Ohio St.3d 236, 240. Appellant's third assignment of error is not well-taken.
 {¶ 20} For the foregoing reasons, the judgment of the Maumee Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Pietrykowski, J. Singer, P.J. Skow, J. concur.