[Cite as *State v. Palsgrove*, 2019-Ohio-1855.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | | |
|---|---|---|---|
| STATE OF OHIO | : | | JUDGES: |
| | : | | Hon. John W. Wise, P.J. |
| Plaintiff-Appellant | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | | |
| | : | | |
| BRENT S. PALSGROVE | : | | Case No. 18-CA-24 |
| | : | | |
| Defendant-Appellee | : | | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Municipal Court,
                                 Case No. 18TRC1690



JUDGMENT:                        Reversed and Remanded



DATE OF JUDGMENT:                May 13, 2019



APPEARANCES:

For Plaintiff-Appellant                  For Defendant-Appellee

DAVID R. KLEMP                           CHASE A. MALLORY
136 West Main Street                     743 South Front Street
Lancaster, OH  43130                     Columbus, OH  43206

*Per Curiam*

{¶ 1}   Plaintiff-Appellant, state of Ohio, appeals the June 15, 2018 journal entry of the Municipal Court of Fairfield County, Ohio, granting the motion to suppress filed by Defendant-Appellee, Brent S. Palsgrove.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On February 16, 2018, Ohio State Highway Patrol Trooper Kaitlin Fuller stopped appellee for speeding.  Upon speaking with appellee, Trooper Fuller detected an odor of alcohol and observed appellee's eyes to be bloodshot and glassy.  Appellee admitted to consuming a beer or two.  Trooper Fuller had appellee perform field sobriety tests.  Following the testing, Trooper Fuller cited appellee with speeding in violation of R.C. 4511.21 and driving under the influence in violation of R.C. 4511.19.

{¶ 3}   On April 2, 2018, appellee filed a motion to suppress, raising several issues. A hearing was held on June 15, 2018.  The hearing was limited to the issues of reasonable suspicion to stop appellee, reasonable suspicion to expand the OVI investigation, substantial compliance with standardized field sobriety testing, and probable cause to arrest.  By journal entry filed June 15, 2018, the trial court granted the motion and suppressed all evidence regarding the OVI, finding no indicia of impairment to expand the OVI investigation.

{¶ 4}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶ 5}   "WHETHER THE TRIAL COURT ERRED IN FINDING THE OFFICER LACKED REASONABLE, ARTICULABLE SUSPICION TO CONTINUE DETAINING

DEFENDANT FOR THE ADMINISTRATION OF STANDARDIZED FIELD SOBRIETY TESTS."

I

{¶ 6} In its sole assignment of error, appellant claims the trial court erred in granting appellee's motion to suppress. We agree.

{¶ 7} As recently stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 8}   As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶ 9}   Specifically, appellant argues the trial court erred in finding Trooper Fuller lacked reasonable, articulable suspicion to detain appellee for the administration of field sobriety tests.

{¶ 10} An officer may not request a motorist to perform field sobriety tests unless the request is independently justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated.  *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998), citing *State v. Yemma*, 11th Dist. Portage No. 95-P-0156, 1996 WL 495076 (Aug. 9, 1996).  "Reasonable suspicion is 'vaguely defined as something more than an inchoate or unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause."  *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2d Dist.1997), quoting *State v. Osborne,* 2d Dist. Montgomery No. CA 15151, 1995 WL 737913, *4 (Dec. 13, 1995).  "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold."  *Village of Kirtland Hills v. Strogin*, 6th Dist. Lake No. 2005-L-073, 2006-Ohio-1450, ¶ 13, citing *Village of Waite Hill v. Popovich*, 11th Dist. Lake No. 2001-L-227, 2003-Ohio-1587, ¶ 11.

{¶ 11} The intrusion on a driver's liberty resulting from field sobriety testing is minor, and an officer therefore need only have reasonable suspicion the driver is under the influence of alcohol in order to conduct a field sobriety test.  *State v. Knox*, 2d Dist.

Greene No. 2005-CA-74, 2006-Ohio-3039.  " 'Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists.' "  *State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849, ¶ 19, quoting *State v. Beeley,* 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶ 16.  *See State v. Hamilton,* 5th Dist. Holmes No. 17CA006, 2017-Ohio-8826, ¶ 17.

{¶ 12} At the June 15, 2018 hearing, Trooper Fuller testified she stopped appellee for speeding.  T. at 10-11.  Upon speaking with appellee, Trooper Fuller detected an odor of alcohol and observed appellee's eyes to be bloodshot and glassy.  T. at 13.  Appellee admitted he was coming from a brewery and had consumed a beer or two.  T. at 13-14.  Trooper Fuller asked appellee to exit the vehicle so she could perform field sobriety tests.  T. at 14.  She based her decision to perform the tests on the "odor of an alcoholic beverage, the bloodshot, glassy eyes, and his admittance to consuming, and then also coming from the brewery."  T. at 15.  On the horizontal gaze nystagmus test, appellee exhibited all six clues.  T. at 28-29.  Appellee exhibited three clues out of eight on the walk and turn test and no clues on the one-leg stand test.  T. at 31-33.  Appellee was able to perform the ABC test and a counting test according to the trooper's instructions.  T. at 33-34.  Following the testing, Trooper Fuller believed appellee was under the influence of alcohol.  T. at 35.

{¶ 13} On cross-examination, Trooper Fuller agreed she had no reason to believe appellee was driving impaired based on his speeding, and he pulled over appropriately.  T. at 40-41.  Appellee did not have slurred speech, produced his driver's license in an appropriate manner, did not have any finger dexterity issues, did not fumble with any

documents, was not abusive or combative, and did not stumble when he exited his vehicle, all things troopers are trained to look for in accessing impaired driving.  T. at 42-44, 47.  A review of the videotape of the stop (State's Exhibit B) evidences appellee was polite, respectful, cooperative, and forthcoming with the trooper.

{¶ 14} In its journal entry filed June 15, 2018, the trial court granted appellee's motion to suppress without stating a specific reason for doing so.  At the conclusion of the hearing, the trial court found the following:

> The Court having reviewed the evidence and admitting in the video and admits the two exhibits, the Court finds that the stop for speed was appropriate, but the expansion with what the Fifth District has handed down in the past is not there.  An odor of alcohol and glassy eyes is not enough. There is no other indicia of impairment.  There is no slurred speech.  There is no fumbling.  There is no stumbling, getting out of the car.  There is no indicia for expansion in this matter so your motion is sustained.  T. at 59.

{¶ 15} We acknowledge this is a close call.  However, based upon the totality of the circumstances, we do not agree with the trial court's analysis.  We find Trooper Fuller "relied on specific articulable facts giving rise to a reasonable suspicion [appellee] was driving under the influence; justifying an extension of the initial detention for the performance of field sobriety testing." *State v. Ciminello*, 5th Dist. Ashland No. 17-COA-030, 2018-Ohio-467, ¶ 25.  Trooper Fuller clocked a speed sixteen miles per hour over the limit, detected an odor of alcohol, observed bloodshot, glassy eyes, and received an

admission from appellee that he was coming from a brewery and had consumed one to two beers.

{¶ 16} Upon review, we find the trial court erred in granting the motion to suppress.

{¶ 17} The sole assignment of error is granted.

{¶ 18} The judgment of the Municipal Court of Fairfield County, Ohio is hereby reversed.

Wise, John, P.J.

Hoffman, J.

Wise, Earle, J., dissents

*Wise, Earle, J., dissents.*

{¶ 1}   I respectfully dissent from the per curiam decision.

{¶ 2}   In *State v. Evans,* 127 Ohio App.3d 56, fn. 2, 711 N.E.2d 761 (11th Dist.1998), our colleagues from the Eleventh District set out a non-exhaustive list of factors that could be considered under a totality of the circumstances test to justify an officer's reasonable suspicion to conduct field sobriety testing:

> Without citing the numerous cases which have been canvassed, it may be said these factors include, but are not limited to (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks

had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative.

{¶ 3} In its findings at the conclusion of the hearing (cited in the per curiam decision), the trial court did not mention appellee's admission of alcohol consumption. I find this admission to be the gravamen of appellant's argument that reasonable articulable suspicion of impairment was present and permitted the trooper to move forward with the investigation of the alleged OVI offense. I believe the question that must be answered is: Does this admission tip the scale in favor of a reasonable suspicion of impairment under the totality of the circumstances?

{¶ 4} In reviewing the eleven factors cited above, I find the first two factors, the time, day, and location of the stop add nothing to the inquiry. Appellee freely admitted that he was at a bar and had consumed alcohol.

{¶ 5} The third factor, erratic driving indicating a lack of coordination, was discounted by the trooper. Trooper Fuller testified she did not witness any erratic driving and had no reason to believe appellee was impaired based upon his speed. T. at 40-41.

{¶ 6} The fourth factor, a cognizable report that the driver may be intoxicated, is absent. Evidence of any reports by other motorists of appellee's impaired driving was not presented.

{¶ 7}   The fifth factor, the condition of the driver's eyes, was observed.  Trooper Fuller testified appellee's eyes were bloodshot and glassy.  T. at 13.

{¶ 8}   The sixth factor, impairments of the driver's ability to speak, was not observed.   Trooper Fuller testified appellee did not exhibit slurred speech and communicated appropriately.  T. at 42-43.

{¶ 9}   The seventh factor, an odor of alcohol, was detected by the trooper.  The closely related eighth factor regarding the intensity of that odor, is absent.  When asked by the prosecutor to "classify the strength" of the odor, Trooper Fuller did not do so.  T. at 13.  She gave the response, "I could detect it. * * * So I mean I immediately noticed it." *Id.*

{¶ 10} The ninth factor concerns the driver's demeanor e.g., belligerent, uncooperative, combative, etc.  Appellee did not exhibit any negative demeanor.  As noted in the per curiam decision at ¶ 13, "appellee was polite, respectful, cooperative, and forthcoming with the trooper."

{¶ 11} The tenth factor, relating to the driver's lack of coordination e.g., stumbling, fumbling, was not present.  Trooper Fuller repeatedly testified appellee did not exhibit a lack of coordination.  T. at 43-44, 46-47.

{¶ 12} The eleventh factor, an admission of alcohol consumption, is present. Appellee freely admitted to having had "a beer or two."  T. at 14.

{¶ 13} As is evident in the videotape of the stop, appellee is a large individual, which is certainly a factor to consider when gauging the effect of alcohol on a person. The consumption of two beers would have less effect on appellee than it would on someone of a smaller stature.

{¶ 14} This court has found that an odor of alcohol and an admission of alcohol consumption are not necessarily two separate, distinct factors which can always be used to reach the level of reasonable suspicion needed to prompt field sobriety testing. In *State v. Keserich,* 5th Dist. Ashland No. 14-COA-011, 2014-Ohio-5120, this court reversed a trial court's denial of a motion to suppress in an OVI case containing an odor of alcohol, bloodshot, watery eyes, and an admission of alcohol consumption. This court stated the following at ¶ 16:

> We conclude the admission of consumption of two alcoholic drinks is significant, but not determinative, given the status of the law in Ohio regarding drinking and driving. A smell of an odor of alcohol on the Appellant is a factor of significance, but is not surprising given his admission of consumption of two alcoholic drinks. These two factors are cumulative in effect; they do not have a synergistic effect on a reasonable grounds determination.

{¶ 15} A footnote in the *Keserich* case indicates: "There was no testimony by the officer regarding the intensity of the odor of alcohol." Additionally, there were other factors "which served to diminish reasonable suspicion of intoxication [and] should not be discounted when applying a totality of the circumstances analysis." *Id.* at ¶ 19. Mr. Keserich did not exhibit any physical or cognitive clues of intoxication. He responded promptly and appropriately to the officer's questions. There were no signs of fumbling while producing his documents or stumbling upon exiting the vehicle and walking.

{¶ 16} The instant case is very similar. Trooper Fuller proceeded to field sobriety testing based solely upon a detectable odor of alcohol (with no indication of the intensity), bloodshot, glassy eyes, and appellee's admission of consuming one or two beers. She indicated there was no other evidence of physical or cognitive impairment. She witnessed no drifting or weaving within the lane of travel. Appellee did not slur his words and responded clearly and appropriately to her questions. He was polite, respectful, and in no way argumentative. His physical dexterity, motor skills, and movements when producing his documents while seated in his vehicle and when exiting his vehicle were without issue. The videotape of the stop confirms Trooper Fuller's observations.

{¶ 17} On direct examination, Trooper Fuller was asked if she had reason to believe appellee was intoxicated or under the influence. T. at 14. Significantly, she did not say "yes." Her response was, "I believed he had been consuming alcohol at that time so I wanted to check him further." *Id.* She based this belief on the "odor of an alcoholic beverage, the bloodshot, glassy eyes, and his admittance to consuming, and then also coming from the brewery." T. at 15. Appellee's admission of consuming alcohol does nothing more than confirm the trooper's detection of the odor of alcohol. Trooper Fuller's suspicion of alcohol consumption is confirmed, but it does not necessarily provide additional indicia of impairment.

{¶ 18} The legal standard generally followed is that an odor of alcohol and bloodshot, glassy eyes alone does not establish sufficient indicia of impairment to proceed to field sobriety testing. This court has found, in cases without an observation of erratic driving, that an odor of alcohol plus eye condition may be combined with an admission of alcohol consumption to establish an indicia of impairment giving rise to a

reasonable suspicion to tip the balance in favor of moving forward on field sobriety testing. *See State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849 (headlight violation, the driver admitted to consuming a few alcoholic beverages); *State v. Bright,* 5th Dist. Guernsey No. 2009-Ohio-1111 (registration issue, the driver admitted to consuming "a beer"); *State v. Hamilton,* 5th Dist. Holmes No. 17CA006, 2017-Ohio-8826 (improper license plates, the driver admitted to consuming two beers). However, the test remains one of a totality of the circumstances and I believe it should not be reduced to a bright line rule that the presence of an odor of alcohol, bloodshot, glassy eyes, and an admission of alcohol consumption automatically justifies the request for field sobriety testing. These three factors must be considered in light of any other observed factors as established in the record.

{¶ 19} As already discussed, appellee did not exhibit erratic driving or physical or cognitive impairment. Trooper Fuller conducted field sobriety testing based upon an odor of alcohol, bloodshot, glassy eyes, and an admission of alcohol consumption. However, in light of the other factors to be considered as cited above, all of which lean heavily against impairment in this case, I would find the trial court was correct in finding that there was not a reasonable "indicia for expansion" to administer field sobriety tests.

{¶ 20} Upon review, I would find the trial court did not err in granting the motion to suppress, and I would deny the assignment or error.